**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **ABDUL BARI,** | ) | **CASE NO. 1:09CV2880** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| **v.** | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **JESSE WILLIAMS, Warden,[1]** | ) | |
| | ) | |
| **Respondent.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Abdul Bari ("Bari"), *pro se*, challenges the constitutionality of his conviction

in the case of *State v. Bari*, Cuyahoga County Court of Common Pleas Case No. 07-494146.

Bari filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on

December 11, 2009.  On July 22, 2010, Warden Williams ("Respondent") filed his

Answer/Return of Writ.  (Doc. No. 10.)  Bari filed a Traverse on September 15, 2010.  (Doc. No.

14.)  For reasons set forth in detail below, it is recommended that Bari's petition be denied.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts "shall be presumed to be correct."

28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate

court summarized the facts underlying Bari's conviction as follows:

> {¶ 2} Bari was initially indicted on January 23, 2007, with two counts of
> aggravated robbery, one count of tampering with evidence, and one count of
> possessing criminal tools. The first indictment ultimately was dismissed, as Bari
> was re-indicted for the same counts on March 28, 2007. The charges were brought
> against Bari and a co-defendant, and arose from an aggravated robbery of two

---

[1]Bari originally named Carl Anderson as the Respondent.  However, Jesse Williams is
the Warden at Allen Correctional Institution where Bari is currently incarcerated, and, therefore,
is the proper Respondent.

victims at knife point at a dentist's office in Westlake.

{¶ 3} On May 22, 2007, Bari entered a guilty plea on both counts of aggravated robbery, which were felonies of the first degree. The remaining counts were nolled.

{¶ 4} On June 27, 2007, the trial court sentenced Bari to a seven-year prison term on each count, to run consecutive, for a total prison sentence of fourteen years. Bari filed a motion to reconsider sentence and/or withdraw guilty plea. On August 3, 2007, the trial court denied the motion without a hearing.

*State v. Bari*, 2008 WL 2833951, *1 (Ohio App. 8th Dist. Jul. 24, 2008).

## II.  Procedural History

### A.      Conviction

On January 22, 2007, a Cuyahoga County Grand Jury charged Bari with two counts of aggravated robbery in violation of Ohio Revised Code ("O.R.C.") § 2911.01, one count of tampering with evidence in violation of O.R.C. § 2921.12, and one count of possessing criminal tools in violation of O.R.C. § 2923.24.  (Doc. No. 1, Exh. 1, Case No. 491110.)  On March 28, 2007, Bari was re-indicted on identical charges.  *Id*. at Exh. 2, Case No. 494146.  The first indictment was later dismissed.  *Id*. at Exh. 6.

On May 22, 2007, represented by counsel, David Kraus, Bari entered a guilty plea to both counts of aggravated robbery, and the remaining counts were nolled.  *Id*. at Exh. 3.  In addition to a request for a presentence report, Bari was referred to the court psychiatric clinic for a psychological report.  *Id*. at Exhs. 3 & 4.  On June 27, 2007, Bari was sentenced to consecutive terms of seven years on each count of aggravated robbery together with five years of post-release control.  *Id*. at Exh. 5.

### B.      Motion to Reconsider Sentence and/or Withdraw Guilty Plea

On July 24, 2007, Bari, through Mr. Kraus, filed a motion to reconsider the sentence and/or withdraw the guilty plea.  *Id*. at Exh. 7.  On August 7, 2007, by journal entry, the court denied the motion without a hearing.  *Id*. at Exh. 9.

### C.      Delayed Direct Appeal

On October 4, 2007, the Eighth District Court of Appeals ("state appellate court") allowed a delayed appeal and appointed counsel.  *Id*. at Exhs. 10-12.  On February 8, 2008, Bari, through

2

counsel, filed his brief setting forth twelve assignments of error:

1.    The court abused its discretion by denying appellant's motion to withdraw his guilty plea.  Case No. 494146, T. p. 11.

2.    The trial court abused its discretion by refusing to hold a hearing on appellant's motion to withdraw his guilty plea.  Case No. 494146, T. p. 11.

3.    The trial court erred to the prejudice of appellant when it failed to advise him at the sentencing hearing of his appeal rights under Crim. R. 32(B).  T. p. 11-26.

4.    The trial court erred in failing to permit appellant and/or appellant's trial counsel to read the PSI and psychiatric evaluation report within a reasonable time before imposing sentence.

5.    The trial court erred by imposing a sentence upon appellant that was not consistent with sentences imposed on similarly situated defendants for similar crimes.  Case No. 494146, T. p. 8.

6.    The trial court committed plain error in failing to dismiss the instant case *sua sponte* for want of a speedy trial.

7.    The trial court erred in sentencing appellant separately for two crimes of similar import.  Case No. 494146, T.p. 8.

8.    The court erred in relying upon inaccurate information in the PSI, falsely claiming that appellant may have "terrorist ties," and that he was on a government "terrorist watchlist," as part of its consideration in imposing its sentence upon appellant.

9.    Appellant was denied his constitutional right to the effective assistance of counsel.

10.   The trial court failed to properly inform appellant in accordance with the requirements of R.C. 2943.032 prior to accepting the guilty plea.  T. p. 11-27.

11.   The trial court improperly considered appellant's religion as a factor in imposing sentencing.  T. p. 22.

12.   The trial court's denial to appellant of discovery of potentially exculpating and/or potentially mitigating evidence, pursuant to Criminal Rule 16, violated appellant's right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16 of Article I of the Ohio Constitution.  Case No. 491110, T. p. 10, 17.

*Id*. at Exh. 13.  On July 24, 2008, the state appellate court affirmed Bari's conviction.  *Id*. at Exh. 17.

On August 24, 2008, Bari, *pro se*, filed a timely Notice of Appeal with the Ohio Supreme Court raising the following propositions of law:

1.    Trial court's direct involvement in plea negotiations and indications on potential sentencing, along with the representations of State, in exchange for guilty plea,

3

invalidating the plea when not adhered to by said parties.

2.      It is ineffective assistance of counsel when counsel: (A) denies the details of a plea agreement on record at plea proceedings, only to evidence said details post-sentence when said agreement is broken; (B) fails to offer any constitutional defenses to felony charges; (C) misinforms Defendant as to potential statutory sentencing in a felony matter; (D) fails to move for dismissal of felony charge when due under R.C. 2945.73(A); and (E) generally fails to defend a defendant when rights are violated.

3.      It violates due process for the State to misuse CR 16 to deny Defendant discovery, and to further circumvent fast and speedy trial time limits; and Defendant's fast and speedy trial rights were violated by the State's double indictment scheme.

4.      A single act of robbery, with a single animus, cannot be prosecuted and sentenced as two separate crimes despite there being two victims.

5.      A guilty plea taken without the mandatory instructions required by R.C. 2943.032 is not free and voluntary.

6.      A sentence based on assumptions not in material fact nor found in the record is erroneous, as is sentence disproportionate to sentences imposed on similarly situated defendants for similar crimes, and also one based on factors such as the religious faith of a defendant.

*Id*. at Exhs. 18 & 19.  On December 31, 2008, the appeal was dismissed as not involving any substantial constitutional question.  *Id*. at Exh. 21.

### D.      Motion for Judicial Release

In the interim, on January 8, 2008, while Bari's direct appeal was pending, he filed a *pro se* motion for judicial release in the trial court.[2]  *Id*. at Exh. 22.  This motion was unopposed by the State.  On May 1, 2008, after appointment of counsel and a hearing, the court granted the motion in part, suspending the consecutive seven-year sentence on count two, but ordering Bari to serve the remainder of the sentence on count one.  *Id*. at Exh. 23.

On June 16, 2008, the state filed a motion to vacate the order of judicial release.  *Id*. at Exh. 24.  The court held another hearing on November 3, 2008, at which the parties agreed to a sentence of five years on count one, consecutive to five years on count two.  *Id*. at Exh. 26.

### E.      Federal Habeas Petition

On December 11, 2009, Bari filed a Petition for Writ of Habeas Corpus and asserted the

---

[2]Bari had previously filed a motion for judicial release dated December 10, 2007, which was opposed by the state, but not ruled upon by the court.  *Id*. at Exh. 24, Tr. 213.

4

following grounds for relief:

> **GROUND ONE**: Conviction was obtained by plea unlawfully induced – trial court was inappropriately involved in plea process when it took plea through specific representations, including leniency and concurrent time, and then failed to honor the same, and further refused to allow petitioner opportunity to withdraw plea in light of said failure to so honor.

> **GROUND TWO**: Conviction was obtained by plea unlawfully induced – State violated terms of plea when it failed to stand mute at sentencing.

> **GROUND THREE**: Sentence imposed was inconsistent with sentences imposed upon similarly situated persons for similar offenses.

> **GROUND FOUR**: Due process was violated when Petitioner's pre-sentence report ("PSI") and psych evaluation report were only provided to trial counsel the morning of the sentencing hearing, particularly in light of said PSI containing materially false statements, to the effect that "subject may be involved in or have knowledge of acts of terrorism due to his name appearing on a terrorist watchlist."

> **GROUND FIVE**: Trial court improperly considered factors relating to petitioner's religion in imposition of sentence, and relied on matters not in material fact when running terms consecutively.

> **GROUND SIX**: Petitioner's conviction occurred in violation of his right to a fast and speedy trial.

> **GROUND SEVEN**: Petitioner's conviction was obtained unlawfully due to state's refusal of discovery to Petitioner, favorable or otherwise.

> **GROUND EIGHT**: Petitioner was subjected to double jeopardy when sentenced separately for two crimes of similar import committed with a single animus.

> **GROUND NINE**: Guilty plea was not free and knowingly tendered when trial court failed to fully inform Petitioner of all potential consequences of so pleading.

> **GROUND TEN**: Conviction was the product of ineffective assistance of counsel.

(Doc. No. 1.)

### III.  Exhaustion and Procedural Default

**A.**        **Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),(c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

> **B.      Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[3] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion.  Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where

---

[3] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and

"prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

7

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

Respondent contends that two of Bari's claims, grounds 3 and 4, are procedurally defaulted.

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

8

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

Furthermore, a habeas court cannot overturn state courts for failure to follow their own rules unless such failure constitutes a violation of due process.  *See Smith v. Anderson*, 2011 WL 475195 (6th Cir. Feb. 11, 2011) (*citing Ramos v. Rogers*, 170 F.3d 560, 564 n.2 (6th Cir. 1999) ("Since this is an appeal of the denial of a habeas petition, we are not permitted to review whether the plea colloquy conformed with the strictures of Ohio Rule 11, but only whether it comported with the requirements of constitutional due process." (*citing Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998))).

As Bari is proceeding *pro se*, "'his pleadings are held to a less stringent standard than those prepared by an attorney' and are liberally construed in his favor." *Humphreys v. United States*, 238 Fed. Appx. 134, 138 (6th Cir. 2007) (*quoting Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 231 (6th Cir. 2006)).

### A. Grounds One and Two

In Bari's first two grounds, he contends that his guilty plea was not voluntary as it was based on a broken plea agreement.  In ground one, Bari argues that the trial court was improperly involved in the plea negotiations and made promises of leniency and concurrent sentences, but

reneged on those promises.  In addition, Bari contends that the trial court erred when it denied his motion to withdraw his guilty plea.  In ground two, Bari contends that the State broke its promise to stand silent during the sentencing hearing.

"[A] guilty plea must be accompanied by 'an affirmative showing that it was intelligent and voluntary.'" *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (*quoting Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)); *see Brady v. U.S.*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970).  "The [Fifth Amendment due process] requirement that a plea of guilty must be intelligent and voluntary to be valid has long been recognized." *Brady v. U.S.*, 397 U.S. at 747 n. 4.  A criminal defendant enters a guilty plea knowingly when he understands the nature of the charge and the "direct consequences" of his guilty plea. *Brady* at 748.  A guilty plea induced by promises or threats that deprive it of the character of a voluntary act is subject to collateral attack.  *See Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

In federal habeas corpus proceedings, "the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *McAdoo*, 365 F.3d at 494.  "Factual findings of a state court that the plea was proper generally are accorded a presumption of correctness." *Garcia*, 991 F.2d at 326; *Railey v. Webb*, 540 F.3d 393, 417 (6th Cir. 2008).  However, while the record constitutes a formidable barrier to a collateral attack on a guilty plea, that barrier "is not invariably insurmountable." *Blackledge v. Allison*, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977).  A guilty plea cannot stand when "'induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.* bribes).'" *Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984), *reversed on other grounds*, *Puckett v. U.S.*, --- U.S. ----, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009), (*quoting Brady v. U.S.*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)).  "In administering the writ of habeas corpus ... the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time of his guilty plea were so

much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make that plea a constitutionally inadequate basis for imprisonment (footnote omitted)." *Blackledge*, 431 U.S. at 75, 97 S.Ct. at 1630; *see also Machibroda*, 368 U.S. at 487; *Fontaine v. United States*, 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973).  "Ultimately, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970); *Parke v. Raley*, 506 U.S. 20, 29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992).

In *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495 (1971), the Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." However, where the plea agreement has not yet been accepted by the court, the Sixth Circuit is equally clear that "'the touchstone of *Santobello* is whether the prosecution met its commitment [to make a sentencing recommendation] and not whether the court would have adopted the government's recommendation.'"  *Johnson v. Hudson*, 2009 WL 1203400, *6 (N.D. Ohio Apr. 30, 2009) (*quoting United States v. Allen*, 516 f.3d 364, 373 (6th Cir. 2008)).

"Stated differently, as the Supreme Court held in *Mabry v. Johnson*, "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of the court, does not deprive the accused of liberty or any other constitutionally protected interest."  *Johnson v. Hudson*, *6, (*citing Mabry* at 507.) When a defendant enters a plea with knowledge of what the prosecutor is recommending in the plea bargain as a sentence and what the judge could impose, the defendant's "plea [is] thus in no sense the product of governmental deception; it rest[s] on no 'unfulfilled promise' and fully satisfie[s] the test for voluntariness and intelligence."  *Johnson v. Hudson,* (*citing Mabry* at 510.) In such circumstances, the Supreme Court concluded that the defendant's "inability to enforce the prosecutor's offer is without constitutional significance."  *Id*.

The Sixth Circuit recently held that even where both parties acknowledge that an off-the-record agreement exists, the relevant factors advocate in favor of limiting a petitioner's plea

agreement to that which was revealed to the state court.  *Smith v. Anderson*, –F.3d –, 2011 WL 475195, *5 (6th Cir. Feb. 11, 2011.)  The *Smith* Court, concluding that the sentencing court was "scrupulous in informing Petitioner of his rights and doing everything in its power to ensure that the plea was freely and voluntarily given, with full knowledge of its consequences," held that the state court decision did not involve an unreasonable application of clearly established federal law.  *Smith*, *5-6.  The *Smith* Court also relied on other Sixth Circuit cases.

In *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999), the petitioner alleged the existence of an "off-the-record" agreement to release him on probation after one year in prison.  The Sixth Circuit rejected the petitioner's challenge to the validity of his plea based upon the allegedly secret agreement.  The Court found that the state trial court's proper colloquy must be deemed to have cured any misunderstanding that the petitioner had concerning the consequence of his plea. *Ramos*, 170 F.3d at 565.  The *Ramos* Court established a bright-line rule: ". . . a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never constitute* an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy."  *Id.* (emphasis in original.)

The state appellate court reviewed the denial of Bari's motion to withdraw his guilty plea based on a broken plea agreement and concluded that he failed to establish the existence of manifest injustice:

> {¶ 9} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea." Crim.R. 32.1. After sentencing, a motion to withdraw a guilty plea is permitted "only in extraordinary cases." *State v. Smith* (1977), 49 Ohio St.2d 261, 264, 361, 361 N.E.2d 1324. The trial court need not hold an evidentiary hearing on a post-sentence motion to withdraw a guilty plea if the "record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice." *State v. Russ*, Cuyahoga App. No. 81580, 2003-Ohio-1001 (citations omitted). "The trial court cannot grant a motion to withdraw a plea based upon an affidavit which directly contradict[s] the record." *State v. Yearby* (Jan. 24, 2002), Cuyahoga App. No. 79000.

> {¶ 10} Here, Bari argues that his plea was not knowingly and voluntarily given because of his trial counsel's misleading advice. He further claims that he was induced to enter a guilty plea in reliance upon "misleading statements by the court" concerning the sentence that would be imposed, and by "broken promises by the [s]tate" with

regard to "standing silent" at sentencing. In support of his motion to withdraw, Bari submitted an affidavit of his trial counsel, which stated that following conversations with the trial court and the state, he advised Bari that a plea "would likely" result in a concurrent sentence of four to seven years. Bari's trial counsel further averred that he recalled assertions made by the state as to remaining silent at sentencing.

{¶ 11} Ineffective assistance of counsel is a proper basis for seeking post-sentence withdrawal of a guilty plea. *State v. Dalton*, 153 Ohio App.3d 286, 793 N.E.2d 509, 2003-Ohio-3813. Moreover, a guilty plea is not voluntary if it is the result of ineffective assistance of counsel. *State v. Banks*, Summit App. No. 01CA007958, 2002-Ohio-4858. In this case, there are no allegations that the court failed to advise Bari of the possible penalties for the charged offenses. Rather, Bari simply claims that he was informed by counsel that a guilty plea "would likely" result in a mid-range sentence. This court has previously recognized that a lawyer's mistaken prediction about the likelihood of a particular outcome is insufficient to demonstrate ineffective assistance of counsel. *State v. Williams*, Cuyahoga App. No. 88737, 2007-Ohio-5073.

{¶ 12} Furthermore, contrary to his assertions that he was misled or induced in entering his plea, the record reflects otherwise. The record shows that the plea agreement, including the possible sentence, was placed on the record and Bari assented to it. The prosecutor stated that the aggravated robbery charges were felonies of the first degree carrying "a possible term of incarceration of three to ten years in annual increments," mandatory five years of postrelease control, and a possible $20,000 fine. The prosecutor stated that if the plea was forthcoming, the state would move to nolle the remaining counts. The prosecutor further stated that "other than what has been stated on the record, there have been no threats or promises made in exchange for the plea ." Defense counsel agreed with this recitation, stating: "[t]hat is a full and accurate recitation of the plea agreement as I understand it and what I've related to my client as well as his rights that he's waiving today." Defense counsel also stated that there were no promises or threats in any manner in relation to the case.

{¶ 13} Likewise, the trial court informed Bari that there was a presumption of incarceration of between three and ten years, after which there would be a five-year period of postrelease control, as well as the consequences of violating postrelease control. Bari indicated that he was aware of these things. When asked whether, other than what was discussed on the record, any promises or threats had been made, Bari responded "No." Defense counsel told the court that the pleas were voluntarily tendered by his client.

{¶ 14} Upon our review, we find that Bari has failed to establish the existence of a manifest injustice that would justify granting his post-sentence motion to withdraw his guilty plea. We also conclude that the trial court did not abuse its discretion in denying Bari's motion without holding an evidentiary hearing. Accordingly, Bari's first and second assignments of error are overruled.

*State v. Bari*, 2008 WL 2833951, **1-2  (Ohio App. 8th Dist., Jul. 24, 2008).

Bari argues that the affidavit of trial counsel, David Kraus, dated July 24, 2007, indicates an agreement which included (1) the judge imposing a concurrent sentence in the range of four to seven years on each count; and, (2) the State remaining silent at the sentencing hearing.  (Doc. No. 10-1 at 10-11, Kraus Affid., ¶¶ 7, 10.)  Bari further contends that the State, when opposing

13

his motion to reconsider the sentence and/or withdraw the guilty plea, did not deny trial counsel's assertions made in the affidavit. (Doc. No. 14 at 2.) Bari relies on *Santobello v. New York*, 404 U.S. 257, 262 (1971), arguing that the alleged promises must be fulfilled as they were an inducement for him to enter a guilty plea. *Id.* at 5. Lastly, Bari argues that the trial judge participated in the plea process which induced him to change his guilty plea. *Id.* at 4-5.

Respondent asserts that the statements in trial counsel's affidavit are not definitive and do not overcome the presumption of correctness that the plea hearing transcript should receive. (Doc. No. 10 at 20.) Further, Respondent contends that the state appellate court reasonably applied federal law. *Id.*

Kraus' sworn affidavit dated July 24, 2007, states as follows:

> 1. I represent defendant Abdul Bari in case number 494146, entitled *State of Ohio v. Bari*.

> 2. This case was extensively pre-tried with Assistant County Prosecutor, Deborah Obed.

> 3. In addition, at least two off the record conversations took place between Prosecutor Obed, Judge Kenneth Callahan and myself.

> 4. The basis of the aforementioned conversations involved potential sentencing consequences in the aforementioned criminal matter.

> 5. As a result of said conversations, it was my understanding that the mitigation, along with the acceptance of responsibility would result in a concurrent mid-range sentence, **although no definitive numerical promises were made by the court**.

> 6. In any event, the court clearly stated that a plea would have an impact on sentencing, and this was relayed to the defendant by myself, along with potential sentencing possibilities based on the conversations with the court and state.

> 7. Defendant was advised that a plea would likely result in a sentence of four to seven years on each count to run concurrent.

> 8. Defendant, [in] affiant's opinion, relied upon these statements in tendering his plea of guilty.

> 9. It is further affiant's opinion, that said plea was not given freely and voluntary, [sic] when his reliance upon the statements of counsel, as relayed by the court, were unintentionally misleading.

> 10. Affiant further recalls assertions made by the State as to remaining silent at sentencing and reflected the same to defendant.

14

> 11.  It is affiant's opinion that defendant would have chosen to litigate his case had he known that a plea would have resulted in two consecutive seven year sentences, with a potential exposure of only six more years.
>
> 12.  The sentence was widely disproportionate to what was reflected to the affiant during pre-trial discussions and relayed to the defendant by the undersigned affiant.

(Doc. No. 1 at 10-11.) (emphasis added.)

In *Santobello*, the United States Supreme Court found that the prosecutor made a specific promise to make no recommendation as to the defendant's sentence.  *Id*. at 262.  As the state never contested this fact, the Court found that the prosecution was not in a position to argue that its inadvertent breach of agreement was immaterial.  *Id*.  *Santobello,* however, is not analogous.  Bari only makes allegations that certain promises existed, whereas in *Santobello,* the State conceded it had promised not to make a sentencing recommendation.  The Sixth Circuit, in cases that are more factually similar, has concluded that where a defendant, who claims there is some sort of secret agreement or promises made to him by the State, is bound by his statements made at the plea hearing.  ". . . [W]here Rule 11 procedures were fully adequate, absent extraordinary circumstances, or some explanation of why defendant did not reveal other terms, at least when specifically asked to do so by the court, a defendant's plea agreement consists of the terms revealed in open court."  *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (*quoting Moore v. Estelle*, 526 F.2d 690, 696-697 (5th Cir. 1976)); *Ramos,* 170 F.3d at 566.

The state-court transcript demonstrates that the plea was voluntary and that Fed.R.Crim.P. 11 requirements were fully addressed.[4]  Bari does not challenge the adequacy of the court's inquiry as it is clear that the judge followed the required procedures.  As in *Baker* and *Ramos*,

---

[4]Federal habeas courts must determine whether the plea colloquy conformed with the requirements of constitutional due process and, therefore, look to Fed.R.Crim.P. 11(b)(2)'s demand that "[b]efore accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)."  *See Ramos* at 564, n. 2 [Fed.R.Crim. P. amended 2002].  Ohio R.Crim.P. 11 is similar but not identical to the federal rule.  *Id*.

Bari did not reveal additional terms of the plea agreement when specifically asked to do so by the court.  In fact, both Bari and his counsel specifically denied the existence of any promises or threats.

At the guilty plea hearing, after informing Bari of his trial rights, the court asked him whether he understood that there was a "presumption of incarceration between three and ten years," and "a five-year period of PRC [post-release control]." (Doc. No. 10-2 at 7-8.)  Bari responded, "Yes, sir."  The court next asked him whether anyone, including his lawyer, the prosecutor's office or the court, promised him anything not stated, or threatened him in any way.  He responded "no."  *Id*. at 7-8  Furthermore, defense counsel stated that the full plea agreement was accurately recited by the prosecutor and that there were no other promises or threats.  (Doc No. 10-2 at 5.)

Attorney Kraus' ambiguous affidavit does little more than acknowledge that he gave Bari misleading advice as to the probable sentence he would receive.  Under the *Ramos* standard, that is insufficient to change the terms of the agreement revealed in open court.  *Ramos*, 170 F.3d at 565.  The *Ramos* Court, finding no difference between extraordinary circumstances and prejudice caused by ineffective assistance, noted that "a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can *never* constitute an 'extraordinary circumstance' under *Baker* when the court conducts a proper, clear, and thorough plea colloquy."  *Ramos*, 170 F.3d at 565 (emphasis in original). *See infra*, p. 31.  The trial court was conscientious in informing Bari of his rights and inquiring as to any promises or agreements that may have been in existence.  Bari is, therefore, foreclosed from claiming a secret promise by the trial court or the state regarding his sentence. "To allow collateral attacks on guilty pleas to be based on such claims would make every plea subject to attack and render the oral responses given in court meaningless."  *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992).  Moreover, for these same reasons, the state appellate court reasonably applied federal constitutional law in concluding that Bari failed to establish manifest injustice regarding the denial of his motion to withdraw his guilty plea.

**B.  Ground Three**

16

In ground three, Bari contends that his sentence is not commensurate with the sentences of similarly-situated defendants (specifically, his co-defendant).  Respondent argues that Bari previously raised this claim by invoking O.R.C. § 2929.11(B).  Therefore, it was not  fairly presented to the state courts as a federal constitutional claim and is defaulted.  (Doc. No. 10 at 10-11.)

Upon review of the record, Bari presented this claim as his fifth assignment of error on direct appeal invoking only state law.  (Doc. No. 10-1 at 114-115.)  The state appellate court addressed the issue applying state law and concluded that Bari failed to establish that he and his co-defendant were similarly situated.  (Doc. No. 10-1 at 151-152.)  The Court, therefore, finds this claim to be procedurally defaulted.

Furthermore, Bari's claim would also fail on the merits as the Constitution does not demand proportionate punishment:

> [A] claim that the trial court violated state law when sentencing a prisoner is not cognizable in a habeas corpus proceeding.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir.1988) (*per curiam* ).  There is no violation of a constitutional right because the United States Constitution contains no strict proportionality guarantee. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir.1991). Furthermore, the mere disparity of a sentence even among co-defendants does not in and of itself suggest that one defendant has been arbitrarily singled out for a more severe punishment than that normally imposed upon similarly situated defendants. *Guerrero-Guerrero v. Clark*, 687 F.Supp. 1022, 1028 (E.D.Va.1988) (*citing United States v. Truelove*, 482 F.2d 1361 (4th Cir.1973) (*per curiam*)).

*Ossman v. Erwin*, 2007 WL 2110494, **4-5 (S.D. Ohio Jul. 13, 2007) (*quoting Terry v. Triplett*, 62 F.3d 1418, 1995 WL 469424 (6th Cir. Aug. 7, 1995)).

## C.  Grounds Four and Five

In ground four, Bari alleges a due process violation when the trial court denied his counsel adequate time to review the presentence investigation report ("PSI") and a psychological evaluation prior to sentencing.  (Doc. No. 1 at 6.)  Specifically, Bari contends that the PSI falsely indicated "subject may be involved in or have knowledge of acts of terrorism due to his name appearing on terrorist watchlist."  *Id*.  Respondent avers that Bari raised this claim on direct appeal, but not to the Ohio Supreme Court, and, therefore, it is defaulted.  (Doc. No. 10 at 11-12.)

17

In ground five, Bari claims that the severity of his sentence was based on his religious beliefs.  (Doc. No. 1 at 6.)  Respondent argues that ground five is speculative and lacks support. (Doc. No. 10 at 25.)

The state appellate court addressed the issue in ground four and found no plain error:

{¶ 20} Bari contends that his trial counsel was not provided with the presentence investigation report ("PSI") and the results of the court-ordered psychological evaluation until minutes before the sentencing hearing, and that he was afforded only five minutes to review both documents with counsel. Bari complains that the reports contained erroneous and prejudicial information, including his "alleged terrorist ties."

{¶ 21} The record reflects that no objection was raised as to the timeliness of the reports. Therefore, we review under a plain error standard. *See* Crim.R. 52(B). The record shows that Bari's counsel recognized the reports and that they were substantially accurate. Also, a review of defense counsel's comments at the sentencing hearing reflected that counsel had a working knowledge of the contents of the report. Finding no plain error, we overrule Bari's fourth assignment of error.

*State v. Bari*, 2008 WL 2833951, *3, (Ohio App. 8th Dist., Jul. 24, 2008).

The state appellate court addressed the issue in ground five and concluded that the trial court relied upon Bari's past criminal behavior to enhance the sentence:

Bari claims that the statements in the PSI concerning his possible terrorist ties and indicating that he was on a terrorist watch list were prejudicial to his sentencing. He further states that the record indicated he was of the Muslim faith and had been a preacher at a mosque in Lorain County prior to his arrest. This court has reviewed the transcript, and finds no indication that the trial court relied upon these statements in sentencing Bari. Rather, the trial court commented on Bari's "consistent pattern of behavior" and the "impact that being robbed with a weapon has on individuals."

*State v. Bari*, 2008 WL 2833951, **1-2  (Ohio App. 8th Dist., Jul. 24, 2008).

Upon review of the record, Bari presented the issue in ground four on direct appeal to the state appellate court and the Ohio Supreme Court based only on state law.  The appellate court, examining the issue for plain error, concluded that Bari's counsel accepted the reports and acknowledged they were substantially correct.  For these reasons the Court finds ground four is procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722, 731,111 S.Ct. 2546 (1991); *Rose v. Kelly*, 2010 WL 2926004, *8, Case No. 1:09cv2084 (N.D. Ohio Jul. 2, 2010). Furthermore, the Sixth Circuit has held that plain error review by a state appellate court does not constitute waiver of state procedural default rules and, thus, does not allow a claim to be considered in federal habeas.  *Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007)*; Seymour v.*

18

*Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Lastly, even if the issue was not defaulted, Bari has not presented a federal due process violation or argued a fundamental miscarriage of justice.

As to ground five, a petitioner who alleges an equal protection violation under the Fourteenth Amendment has the burden of proving "the existence of purposeful discrimination." *McClesky v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (*citing Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967)).  "The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws.'"  *Michael v. Ghee*, 498 F.3d 372, 379 (6th Cir. 2007) (*quoting* U.S. Const. amend. XIV, § 1).  The Clause requires that similarly-situated individuals be treated alike.  *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (*citing Plyer v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)); *Buchanan v. Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996) (*quoting Gutzwiller v. Fenik*, 860 F.2d 1317, 1328 (6th Cir. 1988)).  In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a claimant must allege that a state actor intentionally discriminated against him because of membership in a protected class.  *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) (*citing Johnson v. Morel*, 876 F.2d 477, 479 (5th Cir. 1989)).

Bari argues that as the PSI provided there was no physical harm to the victims and the $25 taken was repaid, the sentencing court must have relied on Bari's religion and other materially false matters.[5]  (Doc. No. 1 at 6; Doc. No. 14 at 5.)

The state appellate court concluded that the trial court relied only upon Bari's past criminal history in enhancing his sentence.  At the sentencing hearing, the court indicated that while Bari made contributions to the community, it could not ignore Bari's history involving crimes with

_____

[5] Bari also contends that after the sentencing hearing, the court, meeting with counsel, stated that the prison term imposed was, "[i]n retrospect * * * 'excessive.'" (Doc. No. 14 at 5-6.) This quotation, however, is taken from Bari's motion to reconsider sentence and/or withdraw guilty plea filed on July 24, 2007.  (Doc. No. 10-1 at 12, Exh. 7.)  The record does not contain such a statement, although it is clear the trial judge was inclined to reduce Bari's sentence and, ultimately, did so.

19

guns.  (Doc. No. 10-2 at 25.)  The court also noted Bari's need for mental health treatment as mentioned in the psychiatric evaluation.  *Id.*  In explaining the non-minimum, consecutive sentences imposed, the trial court stated:  "Because of the separate harm [to the victims] and because of the extensive history with weapons, those sentences will be served consecutive to each other for an aggregate of 14 years, after which you'll serve five years post-release control."  *Id* at 26.

Bari's statements that the court must have relied on his religion does not establish intentional discrimination by the trial court on the basis of his membership in a protected class, such as race, religion, or nationality.  *Carnes v. Engler*, 76 Fed. Appx 79, 81 (6th Cir. 2003) ("Conclusory allegations of unconstitutional conduct are insufficient to state a claim under § 1983.  *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).  Some factual basis for the claim must be set forth in the pleadings.  *See id.*"); *Doby v. Bell,* 2009 WL 963672, *6 (E.D. Mich. Apr. 8, 2009).  Bari's conclusory allegations, without more, do not meet the purposeful discrimination required under the Equal Protection Clause.  His equal protection claim is without merit.

**D.  Ground Six**

Bari claims that his speedy trial rights were violated as he was held in custody in lieu of bail for 153 days.  (Doc. No. 1 at 6-7.)  Respondent argues that five-months' confinement is not presumptively prejudicial under *Doggett v. United States*, 505 U.S. 647, 652 (1992).

The state appellate court, addressing the issue, concluded that Bari's right to a speedy trial under state law was not violated:

{¶ 27} Bari concedes that no speedy trial objection was raised at the trial court level. As this court has previously stated, "By failing to raise a speedy trial claim except as part of a claim of ineffective assistance of counsel, [defendant] has waived all but plain error." *City of Cleveland v. Ali, Cuyahoga* App. No. 88604, 2007-Ohio-3902, *quoting State v. Stewart*, Cuyahoga App. No. 86411, 2006-Ohio-813.

{¶ 28} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after his arrest. For purposes of computing time under R.C. 2945.71(C)(2), each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. See R.C. 2945.71(E). R.C. 2945.72 sets forth several circumstances which extend speedy trial deadlines. "The time within which an accused must be brought to trial * * * may be extended * * * by * * * [a]ny period of delay necessitated by reason of a * * * motion

20

* * * made or instituted by the accused." R.C. 2945.72(E). In addition, speedy trial days may be tolled by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H). Further, speedy trial statutes are strictly construed against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 661 N.E.2d 706, 1996-Ohio-171.

{¶ 29} Here, the record reflects that Bari was arrested on December 20, 2006, and was continuously incarcerated from that time. Bari filed a motion for bill of particulars on January 25, 2007, which was not responded to by the state. The first pretrial was set for February 7, 2007, and was continued at Bari's request. Thereafter, Bari requested continuances of every subsequent pretrial scheduled through May 8, 2007. At that time, trial was set for May 22, 2007, "at the request of defendant." Consequently, Bari's time was tolled from at least February 7, 2007, until his plea on May 22, 2007. Therefore, only 49 days had elapsed. Accordingly, no speedy trial violation occurred, and Bari's sixth assignment of error is overruled.

*State v. Bari*, 2008 WL 2833951, **3-4, (Ohio App. 8th Dist., Jul. 24, 2008).

Bari's speedy trial claim also fails under federal constitutional analysis.  The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial ...."  U.S. Const. Amend VI.  "On its face, the Speedy Trial Clause is written with such breadth that, taken literally, the government would be forbidden to delay the trial of an 'accused' for any reason at all."  *Doggett*, 505 U.S. at 651.  However, the Supreme Court has recognized the constitutional right to a speedy trial permits some delays, which, depending on the circumstances of each case, cannot "be quantified into a specified number of days or months."  *Barker v. Wingo*, 407 U.S. 514, 521-23, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Matthews v. Sheets*, 2010 WL 537002, *30 (S.D. Ohio Feb. 11, 2010).

In *Barker*, the Supreme Court established a balancing test in which the conduct of both the prosecution and the defendant are weighed to assess whether a speedy trial violation has occurred based on the length of delay between the date of indictment or arrest (whichever is earlier) and the date of trial.  *Id.* at 530.  The following four factors are to be considered under this balancing test: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant.  *Barker*, 407 U.S. at 530; *see also Doggett*, 505 U.S. at 651.

"[T]o trigger a speedy trial analysis" under this four-factor balancing test, the defendant first must demonstrate that "the interval between accusation and trial has crossed the threshold

21

dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651-52; *Barker*, 407 U.S. at 530.  "The length of the delay is a threshold requirement.  If the length of the delay is not 'uncommonly long,' then judicial examination ends." *Maples v. Stegall*, 427 F.3d 1020, 1025-26 (6th Cir. 2005) (*quoting Doggett*, 505 U.S. at 652).  While delays approaching one year are considered presumptively prejudicial depending on the seriousness of the charge, *Doggett*, 505 U.S. at 652, n. 1; *Maples*, 477 F.3d at 1026, those of a lesser duration are not *per se* excessive.  *See United States v. White*, 985 F.2d 271, 275 (6th Cir. 1993) (six-and-one-half month delay not presumptively prejudicial); *see also United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (delay of five months not *per se* excessive); *Wilcher v. Rose*, 85 F.3d 630 (6th Cir. 1996) (unpublished) (ten and one half months not presumptively prejudicial); *Hogan v. McBride*, 74 F.3d 144, 145 (7th Cir. 1996) (eight month delay between charge and trial not presumptively prejudicial).

Here, Bari was arrested on December 20, 2006.  He requested continuances from the first pretrial scheduled for February 7, 2007, and every subsequent pretrial.  Bari then requested a trial date of May 22, 2007.  Five months elapsed between Bari's arrest and his plea.  Nothing in the record indicates Bari was prejudiced thereby, and thus, no unconstitutional speedy trial delay occurred.

### E.  Ground Seven

Bari claims that the prosecution violated state discovery rules.  (Doc. No. 14 at 9-10.) Respondent argues that the state appellate court reasonably applied clearly established federal constitutional law in denying this claim.  (Doc. No. 10 at 27.)  On direct appeal, Bari raised the claim as a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) for failure of the State to turn over any exculpatory material.

The state appellate court overruled Bari's assignment of error as follows:

{¶ 55} Bari claims the trial court never ruled on certain discovery motions and that he was denied discovery of potentially exculpating or mitigating evidence in this matter. A defendant's guilty pleas waive any and all constitutional infirmities that occurred prior to those pleas, including his right to discovery and any error associated with discovery violations, unless those violations rendered defendant's pleas less than knowing, intelligent, and voluntary. *State v. Buhrman* (June 26, 1998), Montgomery App. No. 16789; *State v. Spates*, 64 Ohio St.3d 269, 595 N.E.2d 351, 1992-Ohio-130.

22

> Because there is no indication that exculpatory or mitigating evidence was actually withheld, we cannot say that the lack of a formal discovery response affected Bari's plea. Nevertheless, we do not condone the state's conduct in failing to formally respond to the discovery requests.

*State v. Bari*, 2008 WL 2833951, *7, (Ohio App. 8th Dist., Jul. 24, 2008).

The United States Supreme Court emphasizes that a criminal defendant, who has pled guilty on the advice of counsel, waives any non-jurisdictional, constitutional challenge he might have and may attack only the nature of his plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973).  The Court has reiterated the principle set forth in *Tollett* on several occasions.  *See, e.g., United States v. Broce*, 488 U.S. 563, 569 (1989) ("[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary."); *Mabry*, 467 U.S. at 508 (1984) (*citing Tollett* and other cases) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

Based on the standard set forth in *Tollett* and subsequent cases, the state appellate court reasonably applied federal constitutional law.  Bari's ground seven, therefore, is meritless.

**F.  Ground Eight**

Bari argues that he was subjected to double jeopardy when he was sentenced separately for two crimes of similar import that were committed with a single animus.  (Doc. No. 1 at 7-8.)  Respondent contends that as state law determines how one is charged, Bari's argument is not cognizable in federal habeas.  (Doc. No. 10 at 30.)

In *United States v. Broce*, 488 U.S. 563, 576 (1989), the Supreme Court was presented with an argument similar to the one advanced by Bari.  Therein, the appellant, who had entered a

23

knowing and voluntary plea of guilty to two separate conspiracy charges, alleged that there was only one conspiracy and his convictions, therefore, violated the prohibition against double jeopardy.  *Id*.  The Supreme Court found that the defendant's guilty plea foreclosed the defendant from raising a double jeopardy challenge, as "[a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence."  *Id*. at 569.

An exception to this rule exists when it is plain from the language of the charging document that the State failed to charge two legally cognizable crimes to which the defendant could properly have entered a guilty plea.  *Id*. at 575-76.  *See also Menna v. New York*, 423 U.S. 61-62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (*per curiam*) ("[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty.").  In all other respects, any right to assert a claim of double jeopardy is waived by the entry of the plea.  *Broce*, 488 U.S. at 576; *see also Ricketts v. Adamson*, 483 U.S. 1, 10, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (double jeopardy defense may be waived by pretrial agreement).

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V; *Monge v. California*, 524 U.S. 721, 727-28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998).  It protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense.  *Monge*, 524 U.S. at 727-28.  The protection against multiple punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature."  *Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984).  The "question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Id*. (citation omitted).  Under the Double Jeopardy Clause, "when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent."  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citations omitted).

24

The state appellate court found that the trial court did not err in sentencing Bari for each offense, citing the finding of the Ohio Supreme Court "that when a defendant commits aggravated robbery against different victims during the same course of conduct, a separate animus exists for each offense." *State v. Byrd*, 32 Ohio St.3d 79, 85, 512 N.E.2d 611 (1987); *see also State v. Battle*, Franklin App. No. 03AP-39, 2003-Ohio-4687.

Bari's conviction on both offenses did not violate the Double Jeopardy Clause.  As such, ground eight of Bari's petition is without merit.

**G**. **Ground Nine**

In ground nine, Bari claims that his guilty plea was not free and knowingly tendered because the trial court did not inform him of Ohio's post-release control statute.  (Doc. No. 1 at 7-8.)  Respondent claims that this ground is non-cognizable as it involves the application of state law.  (Doc. No. 10 at 31.)

The state appellate court rejected Bari's argument that his plea was not voluntary because the trial court failed to inform him of a specific provision under O.R.C. § 2943.032:

> {¶ 49} "Before accepting a guilty plea, the trial court has the duty to inform a defendant personally of post-release control. Under R.C. 2943.032(E), a trial court is required to 'inform the defendant personally that * * * if the offender violates the conditions of a post-release control sanction * * * upon the completion of the stated prison term, the parole board may impose upon the offender a residential sanction that includes a new prison term up to nine months.' *State v. Pendleton*, Cuyahoga App. No. 84514, 2005-Ohio-3126; *State v. Brown*, Hamilton App. Nos. C-020162, C-020164, 2002-Ohio-5983. R.C. 2967.28(F) limits the maximum cumulative prison term for all violations, to one-half of the stated prison term originally imposed upon the offender." *State v. Evans*, Cuyahoga App. Nos. 84966, 86219, 2005-Ohio-5971.

> {¶ 50} Bari argues that the trial court did not inform him regarding postrelease control in a reasonably thorough manner. A review of the record reflects that the trial court advised Bari that he would receive five years of postrelease control and that he could be returned to prison for half of any time served for violating the terms and conditions of postrelease control. Nevertheless, Bari claims that the trial court did not advise him that a violation of a postrelease control sanction could result in an additional prison term of up to nine months, as set forth in R.C. 2943.032(E).

> {¶ 51} It has been held that a court is not required to provide a rote recitation of the statute to comply with R.C. 2943.032(E). *State v. Poston*, Pickaway App. No. 06CA15, 2007-Ohio-3936. Moreover, courts have been found to comply with the statute where they overstate the time specified in the statute as no prejudice results to the defendant. *See, e.g., State v. Young*, Gallia App. No. 06CA10, 2007-Ohio-5232; *State v. Evans, supra*.

> {¶ 52} We find that the trial court substantially complied with the requirements of

25

Crim.R. 11(C) and R.C. 2943.032 when informing Bari of the postrelease control requirements. Bari's tenth assignment of error is overruled.

*State v. Bari*, 2008 WL 2833951, *7, (Ohio App. 8th Dist., Jul. 24, 2008).

Bari presented this claim on direct appeal as a state law violation.  These allegations fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus.  *Zaffino v. Konteh*, 2006 WL 2360902, *3-5, Case No. 5:05CV1485 (N.D. Ohio Aug. 15, 2006).  To be entitled to relief in federal habeas corpus a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994).  A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. *See Floyd v. Alexander*, 148 F.3d 615, 619 (6th Cir.), *cert. denied*, 525 U.S. 1025 (1998); *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201 (1994).  It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *accord Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

Here, the court advised Bari that he would receive five years of postrelease control and, if he violated its terms, he could be returned to prison for up to half of any time served.  The state appellate court determined that the notice requirements of the state law had been substantially complied with.  Bari has not demonstrated a fundamental miscarriage of justice or a federal due process violation.  He was advised that he would be subject to supervision after his release from prison and of the maximum potential consequences for violations.  Consequently, Bari's ninth ground for relief is without merit.

### H.  Ground Ten - Ineffective Assistance of Counsel

Bari raises the following eight subclaims of ineffective assistance of counsel, all relating back to the previous grounds:

(i) counsel failed to request that the plea agreement be read into the record at the guilty plea hearing; or, in the alternative, counsel falsely misrepresented the plea agreement;

26

(ii) counsel presented no constitutional defenses nor secured any discovery material prior to the guilty plea being entered;

(iii) counsel failed to object to speedy trial rights nor did he object to the double indictment situation;

(iv) counsel failed to request additional time to review the PSI and the psychological evaluation report prior to the sentencing;

(v) counsel represented to Bari, as acknowledged in counsel's affidavit, that Bari's sentence would run concurrent as allegedly promised by the court;

(vi) counsel failed to object at the sentencing when the State violated the terms of the plea agreement;

(vii) counsel failed to request a timely psychological evaluation, as such report was not sought until after Bari pled guilty for sentencing purposes;

(viii) counsel failed to inform Bari that he could be sentenced consecutively and/or beyond the terms represented by the trial court.  Further, Bari claims counsel told him to remain silent at the plea hearing.  Bari represents that if he had been informed, he would have not pled guilty or had the plea agreement reduced to writing.

Respondent asserts that as counsel's performance was not objectively unreasonable, Bari cannot demonstrate prejudice.  (Doc. No. 10 at 32-34.)

It is well-settled that a guilty plea may be found unintelligent or not knowingly entered if it was induced by the ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).  To prevail on a claim that a plea was unknowing or unintelligent because of ineffective assistance of counsel, the petitioner must establish ineffective assistance according to the rubric set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  *Hill,* 474 U.S. at 57-58.

To establish ineffective assistance of counsel, a petitioner must demonstrate that counsel's conduct was so below acceptable standards of representation that he or she was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  *See*

27

*Strickland*, 466 U.S. at 668; *United States v. Bavers*, 787 F.2d 1022 (6ᵗʰ Cir. 1985).⁶  Second, a petitioner must demonstrate that trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694; *United States v. Morrow*, 977 F.2d 222, 229 (6ᵗʰ Cir. 1992) (counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory.")

The United States Supreme Court has observed that "[w]here ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill v. Lockhart*, 474 U.S. at 56 (*quoting McMann v. Richardson*, 397 U.S. 759, 771 (1970)).  The Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Id*. at 58.  While ruling that the first prong of the *Strickland* test remained unchanged in such cases, the Supreme Court explained that the prejudice requirement is satisfied by showing "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial."  *Id*. at 59.

"[C]ounsel may still advise his client to plead guilty if that advice falls within the range of reasonable competence under the circumstances."  *U.S. v. Cronic*, 466 U.S. at 657, 104 S.Ct. at 2046 (*citing Tollett*, 411 U.S. at 266-268).  Reasonable competence is the measure of counsel's performance in plea negotiations.  The validity of a plea may be challenged due to a lack of reasonably competent advice which negates the voluntary and intelligent character of the guilty

---

⁶"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6ᵗʰ Cir. 1990).

plea. *See Bradshaw v. Stumpf*, 545 U.S. 175, 186, 125 S.Ct. 2398, 2407, 162 L.Ed.2d 124

(2005); *Lockhart*, 474 U.S. at 56; *Tollett*, 411 U .S. at 267; *McMann v. Richardson*, 397 U.S.

759,771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).  It follows, though, that the validity of a

plea may not be challenged when reasonably competent advice turns out in hindsight "to be

mistaken either as to the facts or as to what a court's judgment might be on given facts." *Broce*,

488 U.S. at 572 (*quoting McMann v. Richardson*, 397 U .S. at 770, 90 S.Ct. at 1448; and *citing*

*Tollett*, 411 U.S. at 267, 93 S.Ct. at 1608)).

The state appellate court concluded that counsel's performance was not deficient, nor was

Bari prejudiced:

{¶ 41} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Brooks* (1986), 25 Ohio St.3d 144, 495 N.E.2d 407. Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland*, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, 1999-Ohio-102.

{¶ 42} Bari contends that his trial counsel was ineffective for failing to request that one of the indictments be dismissed. The record in this case reflects that the first indictment was ultimately dismissed and the trial court proceeded to sentencing under lower court case number CR-494146. We find Bari has failed to demonstrate that counsel's performance was seriously flawed or that he suffered any prejudice in this regard.

{¶ 43} Bari also asserts that his counsel was ineffective with respect to speedy trial, crimes of similar import, and the timeliness of being provided the PSI and psychiatric report. As we have already rejected these arguments, we find no deficient performance or prejudice occurred on these grounds.

{¶ 44} Next, Bari contends that trial counsel was ineffective for failing to place the plea agreement on the record or in writing, in advising him on probable sentences that would run concurrently, in failing to properly advise him on possible defenses, and in failing to object to the state's violation of the plea agreement. Bari cannot demonstrate from the record of proceedings that counsel provided ineffective assistance. As previously discussed, the terms of the plea agreement, including the possible term of incarceration, were placed on the record, Bari assented to it, and it was represented that no promises or threats had been made.

{¶ 45} Finally, Bari argues that his trial counsel failed to move to have court costs waived in this matter based on Bari's indigency. R.C. 2947.23 requires a court to impose court costs upon all convicted criminal defendants, regardless of financial status. A trial court is authorized to not only assess court costs against an indigent defendant, but also it may collect those costs from an indigent defendant. *State v. Smith*, Allen App. No. 1-07-32, 2007-Ohio-6552, *citing State v. White*, 103 Ohio St.3d

580, 817 N.E.2d 393, 2004-Ohio-5989. Further, while R.C. 2949.092 allows a trial court to waive payment of court costs for indigent defendants under certain circumstances, it is not required to do so. *Id.* An indigent defendant must move to waive payment of court costs "at the time of sentencing. * * * Otherwise, the issue is waived and costs are res judicata." *Smith, supra, citing State v. Threatt*, 108 Ohio St.3d 277, 843 N.E.2d 164, 2006-Ohio-905. Because we cannot say the result of the proceeding would have been different had proper representation been provided, we find no merit to Bari's argument.

*State v. Bari*, 2008 WL 2833951, **5-6, (Ohio App. 8th Dist., Jul. 24, 2008).

In reviewing Bari's multiple claims of ineffective assistance, it appears some of them relate to his plea and some relate to preliminary procedural matters and sentencing. Subclaims (i), (v), and (viii) relate directly to the alleged secret agreement with the prosecutors and judge, without which Bari claims he would not have pled guilty.

As previously discussed, the negotiated plea was placed on the record and Bari, after being given the opportunity, never indicated to the court that additional incentives for his plea existed. Furthermore, upon review of Kraus' affidavit, it reveals that no definite plea agreement with respect to concurrent/consecutive sentences was reached. At best, counsel's estimate of the likely sentence was wrong.

Even assuming that Bari has established deficient performance, he does not meet the prejudice prong. The Sixth Circuit has held that a trial court's proper colloquy can be said to have cured any misunderstanding a defendant may have had about the consequences of his plea. *Ramos*, 170 F.3d at 565 (*citing Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993), *cert. denied*, 510 U.S. 1099 (1994)) (the trial court's "thorough examination at the hearing, taking careful and appropriate measures to dispel any confusion on [the defendant's] part before the plea was accepted," cured any claim that the defendant was prejudiced by erroneous "advice from "the defendant's] trial attorney [that allegedly] led to his misunderstanding of the consequences of his guilty plea"); *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (the trial court's "clear and thorough plea allocution" apprising the defendant "of the actual sentencing possibilities" prevented the defendant from claiming prejudice under *Strickland*). Therefore, a claim of ineffective assistance of counsel predicated on allegedly misleading information by counsel about the terms of a plea agreement is not prejudicial when the court

conducts a proper, clear, and thorough plea colloquy.  *See Ramos* at 565.  As the trial court's plea colloquy was proper, clear, and thorough, Bari is not able to show extraordinary circumstances to explain his failure to reveal additional terms of the plea agreement; and, therefore, he is unable to demonstrate that he was prejudiced by ineffective assistance of counsel.

Furthermore, the state appellate court found that the terms of the plea agreement, including the possible term of incarceration and that no other promises were made, were placed on the record and Bari agreed to them.  Given the level of deference that the AEDPA ascribes to state court rulings, this Court finds that the state appellate court's decision is neither contrary to nor an unreasonable application of *Strickland v. Washington* and *Hill v. Lockhart*.

As to Bari's other ineffective assistance of counsel claims, the state appellate court concluded that counsel was not deficient nor was Bari prejudiced.  (Doc. No. 10-1 at 157.)  In subclaim (iii) Bari raises ineffective assistance relating to speedy trial rights and the double indictment, essentially raising a double jeopardy violation. As the Court has concluded that the underlying claim is meritless, *see* ground eight, Bari was not denied effective assistance of counsel as to subclaim (iii).

In subclaim (iv), Bari contends that counsel failed to request extra time to review the PSI and psychological reports, thereby causing prejudice.  As previously discussed, the trial court provided no indication at the sentencing hearing that it based its sentence on an allegation that Bari was on a terrorist watch list, as alleged in the PSI report.  Moreover, counsel argued in mitigation that Bari suffered from post-traumatic stress disorder and had a drug problem.  In subclaim (vii), Bari claims ineffective assistance due to counsel's failure to request a timely psychological evaluation, but, as presented in ground four, his suffering from mental illness had been demonstrated at his sentencing hearing.  In subclaim (vi), Bari claims that counsel failed to object at sentencing when the State violated the terms of the plea agreement.  However, the Court has concluded the plea was based on the parties' agreement as stated in open court. Finally, in subclaim (ii), regarding Bari's claim that counsel presented no constitutional defenses nor secured any discovery, the Court has found that Bari's guilty plea was voluntary.  Bari, therefore, waived any right to discovery or the presentation of a defense at trial.  Bari has failed

31

to show that there is a reasonable probability the result of his case would have been different had his counsel done all that Bari now complaints about.  The Court, therefore, finds that Bari is not entitled to relief on his ineffective assistance claim.

### V.  Conclusion

For the foregoing reasons, it is recommended that Bari's Petition be denied.

s/ Greg White_____
United States Magistrate Judge

Date:   April 11, 2011

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**